**MORGAN, LEWIS & BOCKIUS LLP**
Melissa C. Rodriguez
Jason D. Burns
Jonathan M. Weinberg
101 Park Avenue
New York, NY 10178-0060
Tel.:   (212) 309-6000
Fax:   (212) 309-6001
*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC.<br><br>                Petitioner,<br><br>          v.<br><br>KARIN GARFIN,<br><br>               Respondent. | Civil Action No. |

## PETITIONER'S MEMORANDUM OF LAW IN
## <u>SUPPORT OF ITS MOTION TO COMPEL ARBITRATION</u>

MORGAN, LEWIS & BOCKIUS LLP

Melissa C. Rodriguez
Jason D. Burns
Jonathan M. Weinberg

101 Park Avenue
New York, NY 10178
(212) 309-6000
(212) 309-6001 (facsimile)

*ATTORNEYS FOR PETITIONER*

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT. ................................................................................ 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY. ................................. 2

    A.     The Parties' Mutual Arbitration Agreement. ................................................. 2

    B.     The Parties' Dispute and Procedural History. ................................................ 3

III.    ARGUMENT. ...................................................................................................... 6

    A.     The Federal Arbitration Act and Controlling Supreme Court Authority
        Require the Court to Enforce the Parties' Arbitration Agreement. ...................... 6

    B.     The Court Should Compel Arbitration of Garfin's Claims. ................................ 7

        1.      The Parties Entered Into a Valid Arbitration Agreement. ........................ 7

        2.      Garfin's Claims Under the NYSHRL and NYCHRL Are Covered
            by the Solution Channel Agreement and Must be Arbitrated. ................. 10

IV.     CONCLUSION. ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011).................................................................................................6

*Bassett v. Elec. Arts, Inc.*,
 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) ...............................................................9

*Clarke v. Upwork Glob., Inc.*,
 No. 17-560, 2017 WL 1957489 (S.D.N.Y. May 10, 2017) ................................8, 9

*Etienne v. Barclays Bank*,
 No. 18-5168, 2019 WL 3325841 (S.D.N.Y. July 24, 2019).....................................9

*Gonder v. Dollar Tree Stores, Inc.*,
 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015)............................................................9

*Guyden v. Aetna, Inc.*,
 544 F.3d 376 (2d Cir. 2008).....................................................................................6

*Gvozdenovic v. United Air Lines, Inc.*,
 933 F.2d 1100 (2d Cir. 1991).............................................................................8, 9

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
 246 F.3d 219 (2d Cir. 2001).....................................................................................7

*Johnson v. Tishman Speyer Properties, L.P.*,
 No. 09-01959, 2009 WL 3364038 (S.D.N.Y. Oct. 16, 2009)................................10

*Karin Garfin v. Charter Communications, Inc. (D/B/A Spectrum News, Spectrum
   News NY1, and NY1), Kevin Dugan, Audrey Gruber, and Joi De Leon*,
 Index No. 156813/2020 ......................................................................................3, 5

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
 137 S. Ct. 1421 (2017)..............................................................................................6

*Latif v. Morgan Stanley & Co. LLC*,
 No. 18-11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...............................10

*Litvinov v. UnitedHealth Grp. Inc.*,
 No. 13-8541, 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014)...................................9

*Lockette v. Morgan Stanley*,
 No. 18-0876, 2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018)......................................8

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) ........................................................................9, 10

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)........................................................................................................6

*Merrill Lynch & Co. v. Optibase, Ltd.*,
No. 03-191, 2003 WL 21507322 (S.D.N.Y. June 30, 2003) ................................8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)........................................................................................................6

*National Union Fire Ins. Co. v. Belco Petroleum Corp.*,
88 F.3d 129 (2d Cir. 1996)........................................................................................7

*Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*,
No. 19-154178, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020) ........................10

*Perry v. Thomas*,
482 U.S. 483 (1987)........................................................................................................6

*Rodriguez v. Four Seasons Hotels, Ltd.*,
No. 09-2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009)................................11

*United Steelworks of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)........................................................................................................7

*Whyte v. WeWork Companies, Inc.*,
No. 20-1800, 2020 WL 3099969 (S.D.N.Y. June 11, 2020) ................................10

*Zendon v. Grandison Mgmt., Inc.*,
No. 18-4545, 2018 WL 6427636 (E.D.N.Y. Dec. 7, 2018)................................10

**Statutes**

9 U.S.C. § 2........................................................................................................................6

Federal Arbitration Act ........................................................................................2, 6, 7, 10

New York City Human Rights Law........................................................................5, 10, 11

New York State Human Rights Law ........................................................................5, 10, 11

State Human Rights Law ........................................................................................5

**Other Authorities**

CPLR 7515(b)(iii)........................................................................................................10

## I.      PRELIMINARY STATEMENT.

Respondent Karin Garfin ("Garfin" or "Respondent") is bound to arbitrate her claims against Petitioner Charter Communications, Inc. ("Charter" or "Petitioner").   At the time of her hire, Garfin entered into a binding arbitration agreement with Charter.   By accepting this binding arbitration agreement (the "JAMS Arbitration Agreement") as a condition of her employment with Charter, Garfin agreed to submit "all claims, disputes, and/or controversies . . . related to [her] employment" "exclusively" to arbitration before JAMS for "final and binding" resolution.

Subsequently, on October 6, 2017, Charter announced its Solution Channel employment-based legal dispute resolution and arbitration program (the "Solution Channel Program," "Solution Channel" or the "Program") by email to employees, including Garfin, which provided a Mutual Arbitration Agreement ("Solution Channel Agreement").   Garfin claims she did not receive a copy of the Solution Channel Agreement because she did not have access to her email at that time. Whether or not Garfin received the Solution Channel Agreement in October 2017 is of no moment here.   It is undisputed that Garfin's counsel sent Charter a demand for arbitration on or about July 6, 2020.   **On July 7, 2020, Garfin confirmed her assent to Solution Channel by submitting her claims to Charter's *Solution Channel* arbitration and alternative dispute resolution process**.   The next month, Garfin further manifested her assent to arbitration under the Solution Channel Agreement before the American Arbitration Association ("AAA"), **the forum required under the Solution Channel Program,** by requesting via Solution Channel that Charter submit her claims to binding arbitration.   By her words and actions, Garfin acknowledged and agreed that she was bound to arbitrate her claims under the Solution Channel Agreement before the AAA.

But, even if she were not bound by that agreement to proceed before the AAA pursuant to the Solution Channel Program (she is), it is undisputed that Garfin is bound to arbitrate her claims

under the JAMS Arbitration Agreement.  Accordingly, Garfin should be compelled to submit her claims to arbitration before the AAA or, in the alternative, before JAMS.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

### A.    The Parties' Mutual Arbitration Agreement.

Garfin was employed as a Senior Producer at a television show on NY1 in New York, New York, for approximately four months from in or around June 2017 to in or about November 2017, when she was terminated for unsatisfactory performance.  *See* Declaration of Melissa C. Rodriguez ("Rodriguez Decl.") at ¶ 15, Exhibit ("Ex.") M (the "Compl."), at ¶¶ 2-4.

At the time she accepted her employment offer on June 13, 2017, Garfin agreed to be bound by the JAMS Arbitration Agreement as a condition of her employment.  *See* Declaration of Chance Cassidy ("Cassidy Decl.") at ¶ 16, Ex. A. ("Garfin Onboarding Status Details"); ¶ 11, Ex. B (the "JAMS Arb. Agreement").  The JAMS Arbitration Agreement provides that "any and all claims, disputes, and/or controversies between [Respondent] and Charter arising from or related to [Respondent's] employment with Charter shall be submitted exclusively to and determined exclusively by binding arbitration before a single Judicial Arbitration and Mediations Services, Inc. ("JAMS") arbitrator under the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.* ("FAA")."  *See* JAMS Arb. Agreement, at ¶ 1; *see also* Cassidy Decl. at ¶¶ 11-16.  The JAMS Arbitration Agreement further provides that arbitration shall proceed in accordance with the terms of the JAMS Employment Arbitration Rules & Procedures and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness.  *Id.*

Garfin received an offer of employment with Charter contingent upon her agreement to the JAMS Arbitration Agreement.  Garfin then electronically acknowledged and accepted the JAMS Arbitration Agreement on June 13, 2017, after having an opportunity to review its terms.  Cassidy

Decl. at ¶¶ 11-16.  Garfin, therefore, had adequate notice of, assented to, and became bound by, the JAMS Arbitration Agreement.  *See* Cassidy Decl. at ¶ 16, Ex. A, Garfin Onboarding Status Details at 4.

In October 2017, the Solution Channel Agreement and Program was emailed to Garfin. *See* Declaration of John Fries ("Fries Decl.") at ¶¶ 5-8, Ex. A.  The Solution Channel Agreement covers "all disputes…related to…employment…including without limitation…unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds…"  *See* Fries Decl. at ¶ 9, Ex. B, ("Solution Channel Agreement") at ¶ B.1.  The Solution Channel Agreement further provides that arbitration will be conducted before one arbitrator who is a current member of the AAA and is listed on the Employment Dispute Resolution Roster.  *Id.* at ¶ H.

B.    **The Parties' Dispute and Procedural History.**

Garfin filed a state court action by filing a summons with notice on March 19, 2019 in the Supreme Court of the State of New York for the County of New York, captioned *Karin Garfin v. Charter Communications; Spectrum News LLC d/b/a "Spectrum News NY1" and d/b/a "NY1;" Kevin Dugan, Audrey Gruber, and Frank Dilella*, Index No. 152908/2019 (the "2019 Court Action").  *See* Rodriguez Decl. at ¶ 3, Ex. A.  In May 2019, Garfin voluntarily discontinued the 2019 Court Action, without ever serving a complaint on Charter in that action.  *See* Rodriguez Decl. at ¶ 4, Ex. B.

On July 6, 2020, Garfin's counsel sent Charter a Demand for Arbitration and Statement of Claim (the "Demand"), explaining the Demand would be filed with JAMS.  *See* Rodriguez Decl. at ¶ 5, Ex. C.  On July 7, 2020, Garfin's counsel contacted Charter's counsel and indicated that "We inadvertently filed the Garfin Arbitration at JAMS, we received a notice from JAMS and will

be filing today at the AAA."  See Rodriguez Decl. at ¶ 6, Ex. D.  That same day, July 7, 2020, Garfin's counsel confirmed on a telephone call with Charter's counsel that Garfin agreed to submit her claims through Charter's Solution Channel Program.  See Rodriguez Decl. at ¶ 6, Ex. D.  That same day, July 7, 2020, and consistent with her agreement, Garfin followed the Solution Channel process by submitting her written claim to Charter's Solution Channel arbitration and alternative dispute resolution process.  See Rodriguez Decl. at ¶ 7 Ex. E.

Consistent with their agreement, Charter internally processed Garfin's claims under the Solution Channel Program.  On August 3, 2020, after Charter completed its review of Garfin's written claim pursuant to the Solution Channel process, Garfin again reaffirmed, in writing, her agreement to arbitrate.  See Rodriguez Decl. at ¶ 8 Ex. F.  Indeed, Garfin's counsel specifically indicated through the Solution Channel process that "**We'd like to request arbitration of our client Karin Garfin's claims**."  *Id.* (emphasis added).

On August 4, 2020, Charter, with Garfin's knowledge and consent, submitted Garfin's Demand to the AAA, as set forth by the Solution Channel Agreement.  *See* Rodriguez Decl. at ¶ 9-10, Exs. G-H.  On August 13, 2020, the AAA sent counsel for the parties a letter "acknowledge[ing] receipt on August 4, 2020, of a AAA Demand for Arbitration which has been filed by the Respondent on behalf of the Claimant, and in accordance with the employment plan or contract containing a clause providing for administration by the AAA."  *See* Rodriguez Decl. at ¶ 11, Ex. I.  The letter included case initiation materials, including a list of potential arbitrators, and set deadlines for: (i) Charter to file an Answer; and (ii) the parties to select an arbitrator and submit a Checklist for Conflicts.  *See* Rodriguez Decl. at ¶ 11, Ex. I.  That same day, the AAA invoiced Charter the Case Management Fee, which Charter paid promptly.  *See* Rodriguez Decl.

-4-

at ¶ 12, Ex. J.  Neither Garfin nor her counsel responded to the AAA's communications at the time. *Id.*

Despite agreeing to and commencing an arbitration proceeding and agreeing to and following the Solution Channel alternative dispute resolution process, on August 26, 2020, over three weeks after requesting arbitration through Solution Channel, counsel for Garfin abruptly reversed course and notified the AAA administrator and counsel for Charter of her intent to withdraw from arbitration, arguing that Garfin's arbitration agreement was now somehow "null and void."  *See* Rodriguez Decl. at ¶ 13, Ex. K.  On August 27, 2020, Charter's counsel contacted Garfin's counsel in an attempt to confer about their contradictory statements.  *See* Rodriguez Decl. at ¶ 14, Ex. L.  To date, Garfin's counsel has yet to respond.  *Id.*

On August 26, 2020, Garfin, in direct breach of her agreements to arbitrate, commenced a second action in the Supreme Court of the State of New York for the County of New York, captioned *Karin Garfin v. Charter Communications, Inc. (D/B/A Spectrum News, Spectrum News NY1, and NY1), Kevin Dugan, Audrey Gruber, and Joi De Leon*, Index No. 156813/2020 (the "2020 Court Action").  *See* Rodriguez Decl. at ¶ 15, Ex. M  (the "Compl.").  Garfin's Complaint in the 2020 Court Action is nearly identical to her demand for arbitration.  *See* Rodriguez Decl. at ¶ 7, Ex. E.  She alleges three causes of action under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").  *Id.*  Garfin's Complaint in the Court 2020 Action, like her demand for arbitration, seeks to recover compensatory and other damages, including punitive damages in an amount no less than $3,000,000.00, attorney's fees, as well as equitable relief.  *See* Rodriguez Decl. at ¶ 15, Ex. M, Compl. ¶ 257(a)-(b). All of Plaintiff's claims in the 2020 Action fall squarely within the contours of the JAMS Arbitration Agreement and the Solution Channel Agreement.  By these agreements, as well as by confirming her

agreement to proceed and proceeding under the Solution Channel process, Garfin agreed to resolve any employment-related disputes with Charter through arbitration, <u>not</u> in New York State court or any other forum.

## III.   <u>ARGUMENT.</u>

### A.   The Federal Arbitration Act and Controlling Supreme Court Authority<br>    Require the Court to Enforce the Parties' Arbitration Agreement.

The Federal Arbitration Act (the "FAA") broadly provides that: "A written provision ... to settle by arbitration ... shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2.  In enacting the FAA, Congress intended to overcome courts' past reluctance to enforce arbitration agreements by placing them on equal footing with all other contracts and establishing a strong federal policy in favor of arbitration.  *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (stating that the FAA reflects a "liberal federal policy favoring arbitration") (internal quotation marks omitted); *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1428 (2017) ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made"); *Perry v. Thomas,* 482 U.S. 483, 489 (1987) (observing that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration").

The FAA, and the strong federal policy favoring arbitration that it embodies, require courts to "rigorously enforce agreements to arbitrate."  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Any ambiguities or doubts as to the scope of an arbitration agreement are resolved in favor of arbitration.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Mitsubishi Motors Corp.,* 473 U.S. at 626 ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (the FAA embodies the "liberal federal

policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quotation and citation committed). The federal "presumption of arbitrability" requires that arbitration be compelled unless it may be said with "positive assurance" that the parties' agreement "is not susceptible of an interpretation that covers the …dispute." *United Steelworks of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is mandatory—not discretionary. *Id.*

## B.   **The Court Should Compel Arbitration of Garfin's Claims.**

The Second Circuit has instructed that, pursuant to the FAA: "[w]hether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (*quoting National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)). Here, the answer to both questions is "Yes."

### 1.   **The Parties Entered Into a Valid Arbitration Agreement.**

Garfin is bound to arbitrate her claims before the AAA pursuant to the Solution Channel Agreement and Program. Although Garfin claims that she did not receive the email with the

Solution Channel Agreement in October 2017[1] (Compl. ¶¶ 234-35), that is irrelevant because, by her words and conduct, Garfin agreed to proceed pursuant to Solution Channel, including arbitrating her claims before the AAA. *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (holding that an agreement to arbitrate may be implied from a party's conduct); *Clarke v. Upwork Glob., Inc.*, No. 17-560, 2017 WL 1957489, at *6 (S.D.N.Y. May 10, 2017) (collecting cases from within the Southern District of New York denying "motions to stay or enjoin ongoing arbitration proceedings—including applications predicated on the movant's purported lack of assent to an arbitration agreement—based on the plaintiff's participation in the relevant proceeding"); *Merrill Lynch & Co. v. Optibase, Ltd.*, No. 03-191, 2003 WL 21507322, at *3 (S.D.N.Y. June 30, 2003) (finding party waived right to object to arbitrator's jurisdiction where it "affirmatively sought adjudication of the merits of [the] claims in the arbitral forum[.]").  As noted above, on July 7, 2020, Garfin confirmed her assent to Solution Channel by submitting her clams to Charter's *Solution Channel* arbitration and alternative dispute resolution process.  *See* Rodriguez Decl. at ¶ 7, Ex. E.  The next month, Garfin further manifested her assent to arbitration under the Solution Channel Agreement before AAA, the forum required under the Solution Channel Program, by requesting via Solution Channel that Charter submit her claims to binding arbitration. *See* Rodriguez Decl. at ¶ 8, Ex. F.  Consistent with Garfin's agreement, Charter internally processed Garfin's claims under Solution Channel, submitted Garfin's claims to the AAA per her request via Solution Channel and promptly paid the associated AAA filing fees.  *See* Rodriguez Decl. at ¶¶ 9-12,  Exs. G-J.   Charter's actions are valid consideration for Garfin's agreement to

---

[1] New York law presumes "that a party has received an email when it is delivered to the party's email address in accordance with regular office procedures[.]" *Lockette v. Morgan Stanley*, No. 18-0876, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018) (applying New York law).

proceed under the Program and the Solution Channel Agreement.[2]  By her words and actions, Garfin acknowledged and agreed that she was bound to arbitrate her claims under the Program and the Solution Channel Agreement before the AAA and has waived any objection to submitting her claims to the AAA.  *Gvozdenovic*, 933 F.2d, at 1105; *Clarke*, 2017 WL 1957489, at *6; *Merrill Lynch & Co.*, 2003 WL 21507322, at *3.

In the alternative, Garfin is bound to arbitrate her claims before JAMS pursuant to the First Arbitration Agreement.  Garfin received an offer of employment with Charter contingent upon her agreement to the First Arbitration Agreement.  *See* Cassidy Decl. at ¶¶ 11-16,   Ex. A.  She then electronically acknowledged and accepted the First Arbitration Agreement after having an opportunity to review its terms.  *Id.*, Ex. B.  These facts establish that Garfin had adequate notice of, assented to, and became bound by, the First Arbitration Agreement.  *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (holding that under New York law "parties are presumed to know the contents of the agreements they have signed") (citation omitted); *Litvinov v. UnitedHealth Grp. Inc.*, No. 13-8541, 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration where employee "electronically acknowledged that she received and reviewed" employer's arbitration policy).

Charter's offer of employment to Garfin is valid consideration for her assent to the JAMS Arbitration Agreement.  *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (granting motion to compel arbitration where plaintiff electronically signed arbitration agreement as part of his offer of employment); *Etienne v. Barclays Bank,* No. 18-5168, 2019 WL

---

[2] Charter's mutual agreement to arbitrate pursuant to the Solution Channel Program any claims it might have against Garfin (*see* Fries Decl. ¶ 9, Ex. B at ¶ B.1) is likewise sufficient consideration for Garfin's agreement to arbitrate.  *See, e.g.*, *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (collecting cases) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement.").

3325841, at *2 (S.D.N.Y. July 24, 2019) ("Courts consistently compel arbitration of employment claims pursuant to valid arbitration agreements in offer letters.") (collecting cases). Charter's mutual agreement to arbitrate all covered claims it might have against Garfin is likewise ample consideration for Garfin's agreement to arbitrate. *Marciano*, 14 F. Supp. 3d at 337 (compelling arbitration of plaintiff's claims after finding that the arbitration agreement contained "sufficient consideration because it mutually binds both parties to submit claims exclusively to arbitration").

As Garfin is subject to valid arbitration agreements,[3] she should be compelled to arbitrate her claims.

### 2. Garfin's Claims Under the NYSHRL and NYCHRL Are Covered by the Solution Channel Agreement and Must be Arbitrated.

Garfin asserts three causes of action under the NYSHRL and NYCHRL. *See* Compl. ¶¶ 240-57. These statutory employment claims plainly fall within the scope of both the Solution Channel Agreement and, in the alternative, the JAMS Arbitration Agreement. Accordingly, even if the Solution Channel Agreement does not apply (it does), Garfin's claims must be submitted to arbitration before JAMS. *See* Fries Decl. ¶ 9,   Ex. B at ¶ B.1; Cassidy Decl. at ¶¶ 11-16, Ex. B; *see also Johnson v. Tishman Speyer Properties, L.P.*, No. 09-01959, 2009 WL 3364038, at *3

---

[3] The FAA preempts CPLR 7515(b)(iii). *Latif v. Morgan Stanley & Co. LLC*, No. 18-11528, 2019 WL 2610985, at *1 (S.D.N.Y. June 26, 2019); *Whyte v. WeWork Companies, Inc.*, No. 20-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020). *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, No. 19-154178, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020), an unpublished New York trial court decision, does not change the fact that Garfin must arbitrate her claims. *Newton* rested on the premise that FAA preemption did not apply in that case because the plaintiff's allegations involved only parties and allegations within New York. That analysis—looking to the allegations of a particular employment dispute to decide whether the agreement involves "interstate commerce" within the meaning of the FAA—is fundamentally flawed. It is contrary to well-established authority holding that arbitration agreements covering, as here, employment relationships by definition involve interstate commerce and are thus covered by the FAA. *See, e.g.*, *Zendon v. Grandison Mgmt., Inc.*, No. 18-4545, 2018 WL 6427636, at *1 n.1 (E.D.N.Y. Dec. 7, 2018). Putting aside the court's flawed analysis in *Newton*, Garfin's own allegations here expressly involve alleged conduct occurring across state lines (in Connecticut), and Charter is not a citizen of New York. *See* Petition, at Docket No. 1, ¶ 20. Therefore, even under the reasoning in *Newton*, the FAA applies and preempts CPLR 7515(b)(iii).

(S.D.N.Y. Oct. 16, 2009) (finding that NYSHRL and NYCHRL claims are arbitrable); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09-2864, 2009 WL 2001328, at *3 (S.D.N.Y. July 10, 2009) (same).

## IV.    <u>CONCLUSION</u>.

For all of the reasons set forth above, Charter respectfully requests that the Court compel all of Garfin's claims to individual arbitration before the AAA in accordance with the terms of the Solution Channel Agreement and Program or, in the alternative, before the JAMS pursuant to the JAMS Arbitration Agreement.

Dated:  August 31, 2020
        New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Melissa C. Rodriguez
       Melissa C. Rodriguez
       Jason D. Burns
       Jonathan M. Weinberg

101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
melissa.rodriguez@morganlewis.com
jason.burns@morganlewis.com
jonathan.weinberg@morganlewis.com

*Attorneys for Petitioner*