K9B6CHAC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
CHARTER COMMUNICATIONS, INC.,

              Petitioner,

         v.                              20 CV 7049(KPF)
                                         20 CV 7050(KPF)
KARIN GARFIN,
              Respondent.
------------------------------x
KARIN GARFIN                             New York, N.Y.
              Plaintiff,                 September 11, 2020
                                         2:00 p.m.
         v.
CHARTER COMMUNICATIONS, INC.

              Defendant.

------------------------------x

Before:

                 HON. KATHERINE POLK FAILLA,

                                         District Judge

                         APPEARANCES


MORGAN, LEWIS & BOCKIUS, LLP
     Attorneys for Plaintiff
BY:  JASON D. BURNS
     MELISSA C. RODRIGUEZ

GODDARD LAW, PLLC
     Attorneys for Defendant
BY:  ANTHONY P. CONSIGLIO
```

1               (Case called; telephone conference)

2               THE DEPUTY CLERK:  Your Honor, this is the matter of

3    20 CV 7049, Charter Communications, Inc. V Garfin; and 20 CV

4    07050, Garfin v. Charter Communications, Inc.

5               In 20 CV 07049, please state your names for the

6    record.

7               MS. RODRIGUEZ:  Melissa Rodriguez with Morgan Lewis.

8    With me is my colleague Jason Burns, also with Morgan, Lewis &

9    Bockius.  And we're the attorneys for the petitioner, Charter

10   Communications, Inc.

11              Good afternoon.

12              THE COURT:  Good afternoon. Ms. Rodriguez.

13              To whom, you or Mr. Burns, should I be directing my

14   questions?

15              MS. RODRIGUEZ:  To me, your Honor.

16              THE COURT:  Thank you for letting me know.

17              Representing Ms. Garfin.

18              MR. CONSIGLIO:  Anthony Consiglio, Goddard Law.

19              Good afternoon, your Honor.

20              THE COURT:  Sir, good afternoon.  You came in a little

21   bit garbled there.  May I have your last name again, please.

22              MR. CONSIGLIO:  Consiglio.

23              THE COURT:  Good afternoon to you, sir, as well.

24              Thank you to all of you for participating in this

25   telephonic conference.  I begin by wishing to each of you

K9B6CHAC

1  safety and good health to you, your families and clients during
2  this pandemic.
3        I am not sure that it matters whether I begin with the
4  7049 case or the 7050 case.  So, Mr. Consiglio, I think it is
5  easier if I begin with you.  Sir, I have read the complaint
6  that was included in with the writ of removal.  I am not sure
7  there is anything further you want me to know on that front;
8  but if there are issues specific to the complaint that you want
9  to bring to my attention, will you please let me know.
10       MR. CONSIGLIO:  I can't think of any, your Honor.  If
11 I do think of something, I will let you know.
12       THE COURT:  Thank you very much.
13       Sir, am I correct that your client worked for Charter
14 or an organization within Charter until some time in 2017?
15       MR. CONSIGLIO:  Correct.  It was a short employment.
16       THE COURT:  Okay.  I saw reference to a prior state
17 court proceeding in 2019 that was dismissed without prejudice.
18       Am I correct about that as well?
19       MR. CONSIGLIO:  I am not up to date on what that was
20 exactly.  I was not with the firm at that time.  I have been
21 reviewing the case, but I think I did see something.
22       Perhaps Ms. Rodriguez can tell us what that is.
23       THE COURT:  Yes.  What I am seeing is a reference in
24 the petition to compel arbitration at paragraph 5 and 6 to a
25 2019 action brought in New York Supreme Court.

K9B6CHAC

1     Ms. Rodriguez, can you please provide information to
2 me on that action.
3     MS. RODRIGUEZ:  Sure.  You are correct, your Honor.
4 Back in 2019 Mr. Garfin commenced an action in the Supreme
5 Court of the State of New York County of New York by filing a
6 summons with notice.  A complaint was never filed or served on
7 Charter.  That action was voluntarily discontinued in May of
8 2019 again without a complaint ever been served on Charter.
9     THE COURT:  Thank you.
10     Mr. Consiglio, there are other individuals who are
11 named in the state court complaint that was removed to me.
12 Specifically, sir, there was I believe a Mr.  Dugan, a
13 Ms. Gruber, and a Ms. De Leon.
14     Would you tell me, please, if any or all of those
15 defendants were served prior to the removal of the case.
16     MR. CONSIGLIO:  No, they were not.
17     THE COURT:  Have they been served since then, sir?
18     MR. CONSIGLIO:  No, they have not.
19     THE COURT:  You will please excuse me if this sounds
20 very basic, but is it your client's intention to serve them?
21     MR. CONSIGLIO:  Yes.
22     THE COURT:  Great.
23     MR. CONSIGLIO:  We'll have to arrange that.
24     THE COURT:  That's in fact the question.
25     Ms. Rodriguez, are these individuals current employees

SOUTHERN DISTRICT REPORTERS, P.C.•••
(212) 805-0300

1   of Charter Communication.
2           MS. RODRIGUEZ:  Mr. Dugan is currently employed by
3   charter.  The other two individuals are not.
4           THE COURT:  Have there been discussions about your
5   firm representing Mr. Dugan as well?
6           MS. RODRIGUEZ:  Yes.  There have been discussions to
7   that effect.  Nothing has been formalized as of yet, but the
8   intent will be to represent Mr. Dugan and also at this point
9   also the two other two individuals if we can get to them.
10  Nothing has been formalized, but those discussions have been
11  had.
12          THE COURT:  If it were the decision to represent the
13  three individuals, would you be waiving the service requirement
14  and accepting service on their behalf?
15          MS. RODRIGUEZ:  I would need to consult with them and
16  see if that is something they would authorize me to do.
17          THE COURT:  Why I am asking is Mr. Consiglio and I
18  will happily sit by the sidelines and I presume he would not
19  want to incur the expense of service or the potential
20  convenience to the recipience of service if it turns out you
21  will be accepting service on their behalf.
22          Do you have a sense, Ms. Rodriguez, as to when you
23  would know?
24          MS. RODRIGUEZ:  I will ask them immediately after this
25  call and hope to get an answer back from them immediately.  We

1   really did not discuss that at all.
2            THE COURT:  Of course.  I understand that this is a
3   proceeding that hasn't been long in the works.
4            May I understand so that I don't have to follow up on
5   it that you will reach out these individuals, check out their
6   views about representation and service and get back to Mr.
7   Consiglio with their views within the next week?
8            MS. RODRIGUEZ:  Yes, I can do that.
9            Mr. Consiglio, can you standdown for a week while we
10  figure out the service issues?
11           MR. CONSIGLIO:  Absolutely, yes.
12           If I can add to that of course we always try to
13  minimize any unnecessary expenses such as service.
14           THE COURT:  I appreciate that.  So I will make a note
15  to myself that within a week there will be some clarity as to
16  these issues.
17           Mr. Consiglio, I have been reading the notice of
18  removal and I have reading the petition to compel arbitration.
19  I know you have had the opportunity to do that as well.  I am
20  sure it is the case that I simply don't have all the facts
21  here.  It would not have been crazy for Charter to think that
22  Ms. Garfin was going to be proceeding with arbitration in 2020
23  and yet suddenly she wasn't.
24           Could you help me understand, first of all, whether
25  the sequence of events that is set forth in the petition to

1    compel arbitration at paragraph 6 through 14 or so is accurate

2    as you understand the facts and then let me know what happens?

3            MR. CONSIGLIO:  I will do my best, your Honor.  The

4    complicated history, which I am still absorbing and learning

5    there were two arbitration agreements at issue during Ms.

6    Garfin's employment.  They were both opt-out agreements and do

7    not require a signature.

8            The second one was sent to her at the actual end of

9    work before her paychecks stopped.  I think there was a period

10   six weeks or so which that second agreement was sent and was

11   sent to her work email account, which she did not have access

12   to.  In fact, she had received something from Charter at her

13   personal email account during those weeks but not an

14   arbitration agreement.  I am thinking this is what was going on

15   in 2019 but I could be wrong, but at that time there was --

16   well, I don't know what was going on in 2019.

17           I believe in 2020 we understood that there was an

18   arbitration agreement, but there was a big mixup about which

19   arbitration we were talking about and then there was a further

20   mixup Ms. Garfin was not aware of any second agreement.  So we

21   had discussed -- this is my understanding and please don't hold

22   me to all the details -- with Ms. Rodriguez an arbitration and

23   that was understood by us to mean -- well, I think we had some

24   misunderstandings in our office as well.  So I think somebody

25   in our office understood that to be the AAA arbitration and

some of us understood it to be the first arbitration that Ms. Garfin herself was aware of, which was at JAMS.

Then after we commenced the arbitration proceedings, and those were commenced at JAMS if I am not mistaken, then we had further discussion with Ms. Rodriguez about it and my understanding is that Charter let us know that we were mistaken in starting that arbitration proceeding not because it was at JAMS but because under the AAA arbitration agreement, Charter was to commence the proceeding and Charter would only be doing that after an internal proceeding.  So that Charter was communicating to us Ms. Garfin has not gone through required internal proceedings.

THE COURT:  Sir, one moment, please.  Thank you for both myself and the court reporter.

When you say "internal proceedings," is that what is referred to in the petition as the Solution Channel Program with initial capital letters?

MR. CONSIGLIO:  Yes.

THE COURT:  Thank you.

Once you learned of that, what happened?

MR. CONSIGLIO:  Well, my understanding is that was approximately July 6th and the following week a decision was issued in the New York County Supreme Court interpreting CPLR 7515.  I think we had not learned about that decision.  It was issued on July 13.  I believe it came to our attention either

K9B6CHAC

the end of July or beginning of August.  It was not a published decision.  Under that decision, the arbitration agreements purporting to require arbitration of discrimination claims under state and city law are null and void under this statute, which the legislature acted to create and modify for this very purpose so that employees are not lured into arbitration if I can put it that way.

         THE COURT:  Yes, let's not put it that way.  I am not making any findings about bullying.  Thank you.

         You don't dispute, sir, that you or one of your colleagues in fact said to Charter, We would like to request arbitration of our client, Karen Garfin's, claims; correct?  You did in fact say that?

         MR. CONSIGLIO:  That is one of the attorneys, correct, to the best of my knowledge.

         THE COURT:  Okay.  But in August Charter submitted your clients demand to AAA, yes?

         I am seeing that in the recitation of events by Ms. Rodriguez.  I guess your point is some time after August 4th, maybe indeed some time after August 13th, you became aware of the New York State Supreme Court decision?

         MR. CONSIGLIO:  Correct.  I don't know the dates.

         THE COURT:  Sir, this is a decision at the trial court level.  I want to make sure I am hearing this right.  The New York Supreme Court, not the New York State Court of Appeals or

K9B6CHAC

appellate division?

MR. CONSIGLIO:  That's correct.  That has since been appealed to the appellate division.

THE COURT:  All right.  We'll see what they do.

So I don't want to read too much into what you are now telling me, but I suspect what you are going say with the issuance of this decision you and your client rethought the propriety of arbitration and elected not to, yes?

MR. CONSIGLIO:  The issuance of that petition and with our understanding of the origin of the arbitration agreement and the fact that we believe Karin Garfin did not agree to arbitration.

THE COURT:  Okay.  Thank you.

Ms. Rodriguez, are you familiar with the decision to which Mr. Consiglio is citing?

MS. RODRIGUEZ:  Yes, I am.

THE COURT:  Could you tell me about it?  If it is discussed in the papers, I am not sure that I paid attention to it.  You can tell me if it is there and I should have seen it.

MS. RODRIGUEZ:  I think in our memo of law it was addressed in a footnote, but no problem I am happy to talk about that case.

In that case what the court found was that provision under CPLR -- I lost the section.  The provision under CPLR that was amended to preclude mandatory arbitration agreement in

1    the context of employment discrimination cases that that
2    provision is not preempted by the Federal Arbitration Act, FAA.
3    In that case, the Court rendered a decision on the basis of
4    their not being any allegations concerning interstate commerce.
5             With respect to the court in New York with the need
6    that their understanding of the concept of interstate commerce
7    in that state was incorrect.  In any case, that case is also
8    factually indistinguishable in that there is an allegation of
9    conduct that occurred allegedly -- alleged conduct that
10   occurred outside of New York and physically in Connecticut.
11   And also the fact that the parties through the arbitration
12   agreement are from different states also make this an
13   interstate commerce contract in and of itself.  So we believe
14   the decision was incorrect in holding that that provision of
15   the CPLR is preempted by the FAA federal courts have found and
16   as we noted in our memoranda of law.  Also in any case that
17   case is distinguishable for the reasons I just mentioned.
18            THE COURT:  I understand.
19            So, Mr. Consiglio, I think I have a sense of the
20   reason why your client changed her mind -- why you and your
21   client changed your minds.  I don't want to cut you off if
22   there are other things you want to talk to me about, but I will
23   move on if you told me what you wanted to.
24            MR. CONSIGLIO:  Yeah.  I just think the fact and the
25   law is complicated enough that I can't possibly even try to

1    summarize it all.  It will require briefing of course.

2    　　　　THE COURT:  Of course.  You are anticipating my next
3    question.  We have two cases.  Sometimes I have two cases that
4    are mirror images of each other.  These are just not quite
5    because one is a petition to compel arbitration and the other
6    is the removed case from state court.  It was my intention to
7    stay one of them and work through the other on the issue of
8    arbitration.  I didn't think we needed to do both at the same
9    time.  My thought was that either we can have an opposition to
10   the petition to compel arbitration in 7049 or we could have a
11   motion to compel arbitration in 7050 that looks suspiciously
12   like the petition to compel arbitration.  I am a bit agnostic
13   as to between the two.

14   　　　　Mr. Consiglio, do you agree with me that what we have
15   to do at the moment is figure out whether this arbitration
16   agreement is valid in this setting or not?

17   　　　　MR. CONSIGLIO:  Yes.  That's my understanding as well.
18   The cases I have looked at say quite explicitly that if there
19   is no essential difference between proceeding to compel
20   arbitration and a motion within a case.  So I am not aware of
21   any reason to worry about that.

22   　　　　THE COURT:  Mr. Consiglio, given that 7049 is one case
23   number earlier than 7050, would you be able to file an
24   opposition to the petition to compel arbitration that explains
25   to me with more detail exactly when you have been talking about

1  today regarding the development in New York state law and the
2  reasons why you believe that controls or should influence the
3  decision here?
4          MR. CONSIGLIO:  Yes.
5          THE COURT:  And then in so doing, would you be
6  comfortable, and I hope the answer is yes, if I stayed 7050
7  until we can have worked out this issue?
8          MR. CONSIGLIO:  I think that makes sense.
9          THE COURT:  Ms. Rodriguez, do you agree?
10         MS. RODRIGUEZ:  Yes, I do.
11         THE COURT:  Mr. Consiglio, how much time would you
12 like for your response in this 7049 case?
13         MR. CONSIGLIO:  Well, I believe in my letter motion I
14 said October 19.  Although that date looks scarily near, I
15 think it is fair for me to say that we should be able to do it
16 by that date.  We do have two attorneys out of four attorneys
17 who are on extended leave.  That is my only sort of big worry.
18         THE COURT:  Of course.
19         MR. CONSIGLIO:  We will endeavor and hopefully we'll
20 be able to meet that deadline.
21         THE COURT:  Let me do this:  Ms. Rodriguez, I will
22 tell you that I am a judge who prefers to have an extended
23 deadline rather than to give extensions.  Do you have any
24 problem if I were to give Mr. Consiglio until the 30th of
25 October in order to submit his opposition?

K9B6CHAC

1        MS. RODRIGUEZ:  No problem at all, your Honor.
2        THE COURT:  Okay.
3        So, Mr. Consiglio, I am giving you until the 30th.
4   You should be okay, yes?
5        MR. CONSIGLIO:  I appreciate that very much, your
6   Honor.
7        THE COURT:  Of course.  These are strange times, sir.
8        Ms. Rodriguez, would I be able to have your reply, if
9   there is a reply, by the 13th of November?
10       MS. RODRIGUEZ:  Your Honor, could I ask for an
11  additional week only because I suspect I will be engaged in a
12  hearing that week?
13       THE COURT:  Listen, I will be generous to both sides
14  and understanding that both sides at least for this conference.
15  So the 20th of November is fine by me.  We'll put a minute
16  entry that puts that together.
17       May I ask as well, Ms. Rodriguez, if you or your firm
18  could arrange to obtain a transcript of this conference in the
19  ordinary course so that when the briefing is concluded, I will
20  be able to refer back to this conference?
21       MS. RODRIGUEZ:  Absolutely, your Honor.
22       THE COURT:  Mr. Consiglio, just one other thing that
23  you may or may not be aware of.  If you will indulge me for a
24  moment.  Some 20 years ago I was a midlevel associate at the
25  Morgan Lewis & Bockius firm.  Indeed, that was 20 years ago.  I

SOUTHERN DISTRICT REPORTERS, P.C.•••
(212) 805-0300

K9B6CHAC

1  don't think it is a basis for my recusal as I have no financial
2  interest in the firm and it has been quite so long.  If you
3  believe otherwise, you will let me know, correct, sir?
4            MR. CONSIGLIO:  We don't want you to recuse yourself.
5  We have utter faith in your attention, your Honor.
6            THE COURT:  I appreciate that.
7            Mr. Consiglio, I think we have a plan going forward
8  for both the 7409 and 7050 case.
9            Is there anything else you would like to address with
10 me in this proceeding today?
11           MR. CONSIGLIO:  I don't think so.
12           THE COURT:  Thank you very much.
13           Ms. Rodriguez and Mr. Burns, anything else you would
14 like me to know today?
15           MS. RODRIGUEZ:  Nothing from us, your Honor.  Thank
16 you.
17           THE COURT:  I wish you well and I thank you.
18           We're adjourned.
19                              o0o