UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., | |
| Petitioner, | |
| – against – | 20 CV 7049 (KPF) (GWG) |
| KARIN GARFIN, | |
| Respondent. | |

# Respondent's Memorandum of Law
# in Opposition to Charter Communications'
# Petition To Compel Arbitration

GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, NY 10006
(646) 504-8363

November 13, 2020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................. iii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT .................................................................................................... 3

I.   As a Threshold Matter, the Court Should Find That No Agreement To
     Arbitrate Claims at the AAA Exists Between the Parties, or Should
     Schedule a Jury Trial if Charter Creates an Issue of Fact in Its Reply ................... 3

     A.   Garfin Never Agreed To Arbitrate at AAA by Conduct or Otherwise ........... 4

     B.   Charter Changed Material Terms in Its October 2017 Agreement That
          Would Gravely Prejudice Garfin ...................................................................... 6

     C.   Charter's October 2017 Agreement Lacks Consideration for Garfin ............. 7

     D.   Garfin Is Entitled to a Jury Trial on This Issue if Charter Should
          Succeed in Raising an Issue of Fact in Its Reply Submission ......................... 8

II.  Then, the Court Should Exercise Restraint and Support New York's
     Public Policy by Denying Charter's Petition Without Prejudice To Renew
     at a Later Time if a Controlling Decision Determines That N.Y. CPLR
     § 7515 Is Wholly or Partly Preempted by the FAA ................................................. 8

     A.   New York's Public Policy Embodied in Its Civil Procedure Law ................. 8

     B.   The Appellate Division of the New York State Supreme Court Is
          Currently Considering the Issues Raised by This Petition, and This
          Court Should Defer to New York's Public Policy Pending the
          Appellate Division's Anticipated Opinion ..................................................... 10

     C.   The Second Circuit Is Currently Considering the Issues Raised by
          This Petition, and This Court Should Defer to Its Anticipated
          Opinion, Especially Given the Court of Appeal's Need To Evaluate
          the Original Meaning of the Federal Arbitration Act in Light of New
          York's Law ..................................................................................................... 11

     D.   Permitting Garfin To Proceed with Discovery During the Appeals
          Courts' Review Will Cause No Prejudice to Charter ...................................... 11

III.   In the Alternative, the Court Should Compel Garfin's Claims Against
       Charter To Be Adjudicated at JAMS and Reopen the Proceedings in the
       Consolidated Case Against the Individual Defendants...........................................13

CONCLUSION............................................................................................................. 13

# TABLE OF AUTHORITIES

Page

## <u>Cases</u>

Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216 (S.D.N.Y. 2020)
(Lehrburger, M.J.) ........................................................................................... 6, 7, 9

Clarke v. Upwork Glob., Inc., 2017 WL 1957489 (S.D.N.Y. May 10, 2017)
(Nathan, J.) ............................................................................................................... 5

Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority, 764 F.3d
210 (2d Cir. 2014) .................................................................................................... 3

Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407 (2019) ........................................... 11

Marciano v. DCH Auto Grp., 14 F. Supp. 3d 322 (S.D.N.Y. 2014) (Karas, J.) ............... 7

Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979 (2d
Cir. 1997) ................................................................................................................. 4

Matter of City of New York v. Uniformed Fire Officers Ass'n, Local 854, 95
N.Y.2d 273 (N.Y. 2000) ........................................................................................ 11

Merrill Lynch & Co. v. Optibase, Ltd., 2003 WL 21507322 (S.D.N.Y. June 30,
2003) (Swain, J.) .................................................................................................. 4, 5

Newton v. LVMH Moët Hennessy Louis Vuitton Inc., 2020 WL 3961988 (Sup.
Ct., N.Y. County, July 10, 2020) ("Newton I") ............................................... 10, 12

Newton v. LVMH Moët Hennessy Louis Vuitton Inc., 2020 WL 5808127 (App.
Div., 1st Dept., Sep. 29, 2020) ("Newton II") .................................................... 10

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) ...................... 9, 11

Tantaros v. Fox News Network, LLC, 465 F. Supp. 3d 385 (S.D.N.Y. 2020)
(Carter, J.), lv to appeal granted Case No. 20-1812, ECF Doc. 27 (2d Cir. Oct. 6,
2020) .................................................................................................................. 11, 13

W.P. Carey, Inc. v. Bigler, 2019 WL 1382898 (S.D.N.Y. Mar. 27, 2019) (Failla,
J.) ............................................................................................................................... 3

**<u>Statutes</u>**

9 U.S.C. § 2 ..................................................................................................... 9

9 U.S.C. § 4 ..................................................................................................... 8

N.Y. CPLR § 7515 .................................................................................. passim

## PRELIMINARY STATEMENT

Petitioner Charter Communications ("Charter") maintains that it sent Respondent Karin Garfin ("Garfin") two mandatory arbitration agreements.

- The first agreement was sent to Garfin at the beginning of her employment in June 2017 (the "June 2017 Agreement").  The June 2017 Agreement was an agreement to arbitrate claims against Charter at JAMS, but it did not include any provision requiring arbitration of any claims against Charter's employees, managers, or officers.  *See* Ex. B to Cassidy Decl. (ECF Doc. 4-2).

- The second agreement was sent to Garfin's work email address at Charter in October 2017, after her employment with Charter had been terminated (the "October 2017 Agreement").  The October 2017 Agreement was an agreement to arbitrate claims at AAA, and it now required arbitration of claims against Charter's employees, managers, and officers as well.  *See* Ex. B to Fries Decl. (ECF Doc. 5-2).  Charter's cover message to employees who received the October 2017 Agreement did not mention the changes that the employees were being asked to agree to, neither the switch from JAMS to AAA nor the added requirement of arbitration of all claims against Charter's employees, managers, and officers.  *See* Ex. A to Fries Decl. (ECF Doc. 5-1).

Garfin's attorney Ms. Goddard communicated clearly to Charter's attorney Ms. Rodriguez on May 22 and May 31, 2019 that Garfin did not receive the October 2017 Agreement because her email was turned off, *see* accompanying Declaration of Megan Goddard and exhibits thereto, and Garfin's attorney Ms. Duaban did so again on August 26, 2020, *see* Ex. K to Rodriguez Decl. (ECF Doc. 3-11).

Yet Charter coyly – and disingenuously – pretends in its Petition that it does not know whether Garfin received the October 2017 Agreement or not.  Even as recently as November 12, 2020, Charter failed to respond to Garfin's attorneys' question whether it had taken any steps to verify whether Garfin's access to her work email account was indeed shut off in September 2017.  *See* Goddard Decl.  Garfin has submitted documentary evidence to corroborate her own averment that her access was blocked.  *See* accompanying Declaration of Karin Garfin and exhibit thereto.

As Garfin and her attorneys explain in their accompanying Declarations, Garfin consistently and steadily has maintained that she is only bound by the June 2017 Agreement to arbitrate at JAMS, and the arbitration filings made in the summer of 2020 were unfortunate mistakes of her attorneys who were under stress occasioned by Covid displacement, illness, and the late stages of a high-risk pregnancy.  The Court should not hold those mistakes against Garfin when the all-important rights of access to a jury trial of her peers, and full discovery of evidence in a court of law, is at stake.

Further, the Court should not find Charter to have been prejudiced by the mistaken filing at AAA, and the Court should not find any conduct constituting acceptance of arbitration at AAA by Garfin.  That is because Garfin's attorneys withdrew from arbitration at AAA 22 days after the administrative filing was made.  No steps were taken to select an arbitrator, much less to proceed in any way in the arbitration.  Indeed, nothing beyond the administrative filing occurred at AAA.

Moreover, any prejudice that Charter may allege it has suffered was brought upon it by itself, because after Ms. Duaban correctly commenced arbitration at JAMS in July 2020, Charter's attorney Ms. Rodriguez did not even discuss with Ms. Duaban the fact that Garfin had clearly objected to arbitration at AAA in 2019 on the ground that she never

2

received the October 2017 Agreement, and did not discuss with her the fact which it now represents to the Court in its Petition, that Charter acknowledges it is bound by the June 2017 Agreement to proceed at JAMS.

Thus, the only arbitration agreement to which Garfin is bound is the June 2017 Agreement to proceed before JAMS.  Since Garfin wishes to sue Charter's employees on her discrimination claims with access to a jury trial of her peers and full discovery in a court of law, she would be gravely prejudiced by being forced to proceed under the October 2017 Agreement due to attorney mistake.

Finally, Garfin respectfully asks the Court to permit her to proceed with her claims against both the individual defendants and Charter in this Court until such time as the Second Circuit rules on the question pending before it:  whether New York State successfully rendered her June 2017 Agreement null and void when it enacted and expanded its prohibition on mandatory arbitration of discrimination claims, N.Y. Civil Procedure Law and Rules ("CPLR") § 7515.

## ARGUMENT

I.    **AS A THRESHOLD MATTER, THE COURT SHOULD FIND THAT NO AGREEMENT TO ARBITRATE CLAIMS AT THE AAA EXISTS BETWEEN THE PARTIES, OR SHOULD SCHEDULE A JURY TRIAL IF CHARTER CREATES AN ISSUE OF FACT IN ITS REPLY**

"Courts do not apply the presumption of arbitrability to 'disputes concerning whether an agreement to arbitrate has been made.' "  *W.P. Carey, Inc. v. Bigler*, 2019 WL 1382898, *5 (S.D.N.Y. Mar. 27, 2019) (Failla, J.), *quoting Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, 764 F.3d 210, 215 (2d Cir. 2014).

"A party 'cannot be required to submit to arbitration any dispute which it has not agreed to submit.' "  *Merrill Lynch & Co. v. Optibase, Ltd.*, 2003 WL 21507322, *3

(S.D.N.Y. June 30, 2003) (Swain, J.), *quoting Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997).

A.      **Garfin Never Agreed To Arbitrate at AAA by Conduct or Otherwise**

Here, Garfin has submitted a Declaration explaining that she never received Charter's October 2017 Agreement to arbitrate her claims at the AAA because it was sent to her work email account at Charter after her employment was terminated and her access to the email account was blocked, and she has attached documentary evidence to corroborate her averment. *See* accompanying Declaration of Karin Garfin and exhibit thereto.

In its Petition, Charter alleges only that it sent the October 2017 Agreement to Garfin at her work email. It does not allege that Garfin received the email or, much less, that she made any manifestation of an acceptance of the October 2017 Agreement. *See* Declaration of John Fries dated August 31, 2020, ¶ 11 (ECF Doc. 5) ("I also have access to and reviewed the list of Employees to whom the Solution Channel Announcement was emailed on October 6, 2017, and have confirmed that Karin Garfin was included in this distribution list.").

Instead, Charter argues that "by her words and conduct, Garfin agreed to proceed pursuant to Solution Channel, including arbitrating her claims before the AAA." Pet.'s Mem. of Law dated August 31, 2020, page 8 (ECF Doc. 6). In support of its argument, Charter cites only actions taken by Garfin's attorneys, who have submitted their own Declarations with this opposition to explain that they mistakenly conflated the two arbitration agreements that Charter attempted to force on Garfin in less than six months time, and that their actions were taken by mistake. *See* accompanying Declarations of Saranicole Duaban and Megan Goddard.

The case law cited by Charter does not support its argument that Garfin's attorneys' conduct constitutes an acceptance by her of the October 2017 Agreement or of arbitration at AAA.  Charter first cites a case where the plaintiffs "appeared, either in person or through a representative, at least two Arbitration conferences before a designated arbitrator"; one of the plaintiffs "expressly advised" the arbitrator that the plaintiffs did not object to arbitration and consented to expedited proceedings and entry of a discovery schedule and hearing date.  *Clarke v. Upwork Glob., Inc.*, 2017 WL 1957489, *6 (S.D.N.Y. May 10, 2017) (Nathan, J.).

Next, Charter cites a case where the party seeking to avoid arbitration was a major corporation, Merrill Lynch.  The court in that case denied Merrill Lynch's request after finding that Merrill Lynch had "affirmatively sought adjudication of the merits of certain . . . claims in the arbitral forum and pursued discovery in that forum relating to the merits of [the other party's] claims."  *Merrill Lynch & Co.*, 2003 WL 21507322 at *3.

Here, Garfin did not personally participate in any of the conduct cited by Charter as constituting an acceptance of the October 2017 Agreement or an agreement to arbitrate claims at AAA.  Furthermore, neither Garfin nor her attorneys participated in any proceedings before an arbitrator or pursued discovery at AAA, as was the case in the cases cited by Charter where conduct was found to constitute agreement to arbitrate.  On the contrary, when they discovered their mistake, Garfin's attorneys informed the AAA administrator that Garfin was not required to and would not participate in arbitration before the AAA.  *See* Ex. K to Rodriguez Decl. (ECF Doc. 3-11) (clarifying Garfin's refusal to participate in arbitration and her position that she never received the AAA agreement or had an opportunity to opt out in an email to the AAA Manager of ADR Services).  Moreover, that communication to the AAA administrator occurred 22 days after the

arbitration commencement paperwork was filed with the AAA and before any steps were taken to select an arbitrator.  *See* Duaban Decl.; Goddard Decl.

> **B.**   **Charter Changed Material Terms in Its October 2017 Agreement That Would Gravely Prejudice Garfin**

When an employer changes material terms of a preexisting agreement to arbitrate, its "failure to alert employees to the change of scope, and the resulting potential for confusion" constitutes a lack of clarity that is an indication of procedural unconscionability.  *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 249 (S.D.N.Y. 2020) (Lehrburger, M.J.).

Here, the October 2017 Agreement changed the arbitral forum from JAMS to AAA and changed other material terms as well.  The June 2017 Agreement did not include a provision requiring arbitration of related claims against individual officers and employees of Charter.  *Cf.* June 2017 Agreement, Ex. B to Cassidy Decl. (ECF Doc. 4-2) *with* October 2017 Agreement, Ex. B to Fries Decl., Section B.2 (ECF Doc. 5-2) (including claims against Charter's "individual officers, directors, shareholders, agents, managers or employees (in an official or personal capacity . . .)" within the scope of covered claims).

Nor did Charter attempt to highlight these material changes or bring them to the attention of employees who (unlike Garfin) received the email announcement in October 2017.  The announcement sent to employees made no mention of the preexisting agreement to arbitrate at JAMS, the new agreement's provision of arbitration at AAA, or the new provision requiring arbitration of related claims against individual officers and employees of Charter.  *See* memo dated October 6, 2017, Ex. A to Fries Decl. (ECF Doc. 5-1).  That failure to alert its employees to the broadened scope of claims that would now be subject to arbitration is a clear indication of procedural unconscionability.  *See Chen-*

*Oster*, 449 F. Supp. 3d at 248–49 (concluding a mandatory arbitration provision was tainted by procedural unconscionability where the employer failed to alert its employees that the scope of the provision was broader than the employees' preexisting provisions).

Thus, "[e]ven if [Garfin] did review the provision," Charter's broadening of the scope of claims subject to arbitration without alerting her to that change would have been unconscionable. *Id.* at 248. That is particularly important here, where Garfin has sued Charter's employees and managers individually on her claims, and stands to lose a hearing by a jury of her peers and access to full discovery in a court of law if she is compelled to arbitrate her claims under the October 2017 Agreement. *See further* Section II below.

**C.     Charter's October 2017 Agreement Lacks Consideration for Garfin**

Finally, because Garfin's employment was terminated more than a week before Charter instituted its new arbitration program and sent the October 2017 Agreement to its employees, Charter cannot assert that mandatory arbitration was a condition of Garfin's employment. Her employment had already been terminated. There was no employment offered or available to Garfin in exchange for which she could have agreed to arbitrate her claims even if she had received the proposed agreement.

Some courts have found that a "mutual agreement to arbitrate" clause, such as that contained in the October 2017 Agreement, can constitute sufficient consideration even in the absence of any continued employment. *See, e.g.*, *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (Karas, J.) (collecting cases).

Here, however, Garfin already had Charter's agreement to arbitrate in the June 2017 Agreement, to which Charter continues to acknowledge in its Petition that it is bound. Thus, the October 2017 Agreement offered no consideration to Garfin, even if she had received it, and would be invalid for that reason alone.

7

**D.     Garfin Is Entitled to a Jury Trial on This Issue if Charter Should Succeed in Raising an Issue of Fact in Its Reply Submission**

Because Garfin has not demonstrated by her conduct or otherwise any agreement to submit to arbitration at the AAA, and because the October 2017 Agreement that Charter seeks to enforce would deprive her of significant rights and would provide no consideration in return, the Court should find that no agreement to arbitrate at AAA was ever formed.

If the Court cannot reach that determination as a matter of law, or if Charter should succeed in raising an issue of fact in its reply submission, then Garfin is entitled to a jury trial to decide the factual issue of whether an agreement to arbitrate at AAA was formed. *See* 9 U.S.C. § 4; Jury Demand dated September 4, 2020, ECF Doc. 15.

**II.     THEN, THE COURT SHOULD EXERCISE RESTRAINT AND SUPPORT NEW YORK'S PUBLIC POLICY BY DENYING CHARTER'S PETITION WITHOUT PREJUDICE TO RENEW AT A LATER TIME IF A CONTROLLING DECISION DETERMINES THAT N.Y. CPLR § 7515 IS WHOLLY OR PARTLY PREEMPTED BY THE FAA**

Although Charter's petition to compel arbitration sets forth long established law governing arbitration agreements, Charter ignores the current context of this dispute.

**A.     New York's Public Policy Embodied in Its Civil Procedure Law**

In 2018, the New York legislature enacted CPLR § 7515, and in 2019 expanded it, to provide maximum protection to employees against mandatory arbitration agreements. In doing so, New York recognized, and came to the aid of, employees who suffer workplace discrimination at the hands of powerful, wealthy employers who increasingly use arbitration agreements as contracts of adhesion to deny employment to any New York resident who is unwilling to waive her or his right to a jury trial.  New York thus indicated a striking policy choice to take back a small measure of the power differential enjoyed by employers in recent years, and re-invest it in employees' access to a jury of their peers.

The reality of the situation today is that employers use arbitration agreements as contracts of adhesion – if the employee won't sign, they don't get the job.  Given the power differential between employers and employees, that is a constitutionally suspect contract of adhesion that amply justified New York's creation of CPLR § 7515 to clarify "such grounds as exist at law or in equity for the revocation of any contract" providing for unenforceability in the language of the Federal Arbitration Act ("FAA") itself.  9 U.S.C. § 2.  "We note that categories of contracts otherwise within the Arbitration Act but in which one of the parties characteristically has little bargaining power are expressly excluded from the reach of the Act."  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 n. 9 (1967).

Mandatory arbitration agreements are frequently sprung on employees as a surprise during onboarding "paperwork" in the employees' first days on the job, and coyly placed within a stack of papers to be signed, or screens to be clicked on a computer.  Employers know that their tactics in obtaining these mandatory arbitration agreements are coercive and unfair and deprive employees of substantial, important rights; that's why they don't frankly and honestly discuss with employees during the interview or onboarding process that the arbitration agreement is a condition of their employment.  *See Chen-Oster*, 449 F. Supp. 3d at 248–49 (although federal and New York law permit mandatory arbitration agreements, clarity and conspicuousness of the terms remain significant concerns, and their lack gives rise to procedural unconscionability).

New York proudly came to the aid of employees in 2018 and 2019 in recognition of the reality that mandatory arbitration agreements are, first, used coercively, and, second, enable discrimination.

**B.** **The Appellate Division of the New York State Supreme Court Is Currently Considering the Issues Raised by This Petition, and This Court Should Defer to New York's Public Policy Pending the Appellate Division's Anticipated Opinion**

Charter argues that the instant case is distinguishable from *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, 2020 WL 3961988 (Sup. Ct., N.Y. County, July 10, 2020) (hereinafter "*Newton I*"), *appeal pending* 2020 WL 5808127 (App. Div., 1st Dept., Sep. 29, 2020) (hereinafter "*Newton II*") (denying motion to compel arbitration and holding that CPLR § 7515 was not preempted by federal law).  Charter argues only that because Garfin's employment concerned conduct occurring in Connecticut, *Newton* does not offer this Court any guidance.  But this is self-serving:  Charter's assertion is based only upon its own corporate headquarters, not on Garfin's actual employment.  *See* Pet.'s Mem. of Law dated August 31, 2020, page 10, footnote 3 (ECF Doc. 6).

In any case, Justice Nock's decision in *Newton* is currently on appeal in the Appellate Division, with briefing due in the February 2021 term.  *See Newton II* (staying proceedings in the trial court on the condition that the appeal is perfected for the February 2021 term).  There is no reason for this Court to grant Charter's petition to compel arbitration while *Newton* is on appeal.  The Court should abstain, and permit Garfin to proceed with discovery in this Court until such time as the legal issues are clarified by the Appellate Division's decision in the *Newton* case.  Those issues – weighty issues of public policy – are issues of first impression for the Appellate Division.

Throughout his decision, Justice Nock emphasized that workplace discrimination is one of the "grave public policy issues" that New York seeks to protect, and the "profound policy interest underlying the enactment of CPLR 7515."  *Id.* at *3; *see id. passim*.  The issue of "whether public policy precludes arbitration of the subject matter of a particular

10

dispute is a threshold issue on a motion to compel arbitration." *Id.* at *3, *citing Matter of City of New York v. Uniformed Fire Officers Ass'n, Local 854*, 95 N.Y.2d 273, 280–81 (N.Y. 2000).

### C.     The Second Circuit Is Currently Considering the Issues Raised by This Petition, and This Court Should Defer to Its Anticipated Opinion, Especially Given the Court of Appeal's Need To Evaluate the Original Meaning of the Federal Arbitration Act in Light of New York's Law

The question of federal preemption of CPLR § 7515 is on appeal in the federal courts as well. *See Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385 (S.D.N.Y. 2020) (Carter, J.) (certifying for appeal the question whether the prohibition on mandatory arbitration clauses contained in CPLR § 7515 conflicts with the FAA), *lv to appeal granted* Case No. 20-1812, ECF Doc. 27 (2d Cir. Oct. 6, 2020). There is no reason for this Court not to abstain on the question of federal preemption until the Second Circuit has issued an opinion.

This is particularly so because the Second Circuit will have an opportunity to review the history and original meaning of the Federal Arbitration Act ("FAA") in light of New York's new law, CPLR § 7515, before it determines whether that law is preempted by the FAA. The Supreme Court stated: "We note that categories of contracts otherwise within the Arbitration Act but in which one of the parties characteristically has little bargaining power are expressly excluded from the reach of the Act." *Prima Paint Corp.*, 388 U.S. at 402 n. 9 (1967), *quoted in Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1420 (2019) (Ginsburg, J., dissenting).

### D.     Permitting Garfin To Proceed with Discovery During the Appeals Courts' Review Will Cause No Prejudice to Charter

Permitting Garfin to proceed with discovery in this action will cause no substantial prejudice to Charter if, once the appeals courts have ruled, the arbitration agreement must

be enforced.  On the contrary, the discovery exchanged in this Court, and all other progress made toward a resolution of Garfin's claims and Charter's defenses will be used by all parties if the action, or some or all of the claims against some of the parties in the action, is then transferred to an arbitration.

Indeed, efficiency will be served by keeping the action in this Court, rather than severing the claims against Charter from the claims against the individual Defendants who have not petitioned to compel arbitration.  The individual Defendants have been in discussion with Charter about whether it will undertake representation of them in this action since at least September 11, 2020, the date of the Initial Conference conducted by the Court in this action, when Charter's attorney Ms. Rodriguez made that representation to the Court.  *See also* Minute Entry dated September 11, 2020 (ordering Charter to inform the Court whether it would accept service on behalf of the individual Defendants by September 18); Letter from Melissa Rodriguez dated September 18, 2020, Consolidated Case No. 20-CV-7050, ECF Doc. 15 (stating that Charter's attorneys do not represent the individual Defendants at this time and undertaking to advise Goddard Law regarding acceptance of service on their behalf by October 31).

On the other hand, granting Charter's petition will cause substantial prejudice to Garfin.  The loss of a jury trial and the rules of evidence – the loss of due process – that New York's public policy seeks to safeguard for Garfin is priceless.  As Justice Nock observed:  "Were this court to stay this action and remit the parties to binding arbitration, Ms. Newton would lose her right to trial by jury.  She would also be unable to avail herself of the rules of evidence governing actions at law in this state, by virtue of Rule 22 of the JAMS Rules which provides that '[s]trict conformity to the rules of evidence is not required … .' "  *Newton I* at *2.

Thus, out of respect for New York's public policy, and in deference to the Second

Circuit's review of the question of federal preemption, and in view of efficiency and

conservation of resources, this Court should allow Garfin to proceed with all of her claims

against all of the Defendants in her consolidated case in this Court unless and until the

Second Circuit issues an opinion in the *Tantaros* case.

**III.    IN THE ALTERNATIVE, THE COURT SHOULD COMPEL GARFIN'S CLAIMS AGAINST
CHARTER TO BE ADJUDICATED AT JAMS AND REOPEN THE PROCEEDINGS IN
THE CONSOLIDATED CASE AGAINST THE INDIVIDUAL DEFENDANTS**

If the Court is unwilling to allow Garfin to proceed in this Court, as discussed

above, it should compel arbitration under the June 2017 Agreement to arbitrate claims

before JAMS – the only agreement to which Garfin agree to be bound as a condition of

employment.

At the same time, the Court should reopen the proceedings in Garfin's consolidated

action in this Court against the individual Defendants named in that action.  The June 2017

Agreement in this case does not provide for arbitration of claims against Charter's officers

and employees, and, indeed, the individual Defendants in Garfin's consolidated case have

not sought to compel arbitration of Garfin's claims against them, despite the fact that they

have been in discussion with Charter about representation in this action since at least

September 11, 2020, as discussed above.

## CONCLUSION

For all these reasons, the Court should determine that the June 2017 Agreement is

the only agreement to arbitrate that exists between the parties, and the October 2017

Agreement is invalid [etc.].  Additionally, the Court should deny Charter's petition without

prejudice to renewal if and when the appeals courts considering the issue determine that

CPLR § 7515 is preempted in whole or in part by federal law.

Dated: November 13, 2020
       New York, New York

                                        Respectfully submitted,

                                        GODDARD LAW PLLC

By: _____
        Anthony P. Consiglio
        Megan S. Goddard
     39 Broadway, Suite 1540
     New York, NY 10006
     (646) 504-8363
     anthony@goddardlawnyc.com
     megan@goddardlawnyc.com
     *Attorneys for Respondent Karin Garfin*

14