**MORGAN, LEWIS & BOCKIUS LLP**
Melissa C. Rodriguez
Jason D. Burns
Jonathan M. Weinberg
101 Park Avenue
New York, NY 10178-0060
Tel.:   (212) 309-6000
Fax:    (212) 309-6001
*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC.<br><br>              Petitioner,<br><br>              v.<br><br>KARIN GARFIN,<br><br>              Respondent. | Civil Action No. 20 Civ. 7049 (KPF)<br>[rel. 20 Civ. 7050 (KPF)] |

## PETITIONER'S REPLY MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

MORGAN, LEWIS & BOCKIUS LLP

Melissa C. Rodriguez
Jason D. Burns
Jonathan M. Weinberg

101 Park Avenue
New York, NY 10178
(212) 309-6000
(212) 309-6001 (facsimile)

*ATTORNEYS FOR PETITIONER*

**TABLE OF CONTENTS**

Page

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT. | | 1 |
| II. | ARGUMENT. | | 2 |
| | A. | Garfin Is Bound by The Solution Channel Agreement to Arbitrate at AAA. | 2 |
| | B. | Garfin's Agreement to Arbitrate Her Claims Against The Individual Defendants Has No Bearing on The Enforceability of The Solution Channel Agreement. | 5 |
| | C. | Arbitration Should Not Be Stayed Pending Unrelated Appeals. | 7 |
| | D. | The Court Should Deny Garfin's Request to Litigate Her Claims in the Court Action Pending the Court's Ruling on the Petition.. | 9 |
| | E. | Alternatively, the Court Should Compel Garfin to Arbitrate at JAMS. | 10 |
| III. | CONCLUSION. | | 10 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altman v. Salem Media of New York, LLC*,
  132 N.Y.S.3d 606 (N.Y. App. Div. 2020) ...............................................................................10

*Am. Cash Card Corp. v. AT&T Corp.*,
  210 F.3d 354 (2d Cir. 2000)......................................................................................................2

*Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc.*,
  No. 98-2494, 1998 WL 283355 (S.D.N.Y. May 29, 1998) .......................................................9

*Bassett v. Elec. Arts, Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ..........................................................................................6

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020).......................................................................................5

*Citibank, N.A. v. Franco*,
  No. 11-2925, 2011 WL 6961404 (S.D.N.Y. Dec. 29, 2011) .....................................................7

*Clinton v. Oppenheimer & Co. Inc.*,
  824 F. Supp. 2d 476 (S.D.N.Y. 2011).......................................................................................9

*DaPuzzo v. Globalvest Mgmt. Co., L.P.*,
  263 F. Supp. 2d 714 (S.D.N.Y. 2003).......................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..................................................................................................................9

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002)..................................................................................................................8

*Gerszberg v. Li & Fung (Trading) Ltd.*,
  215 F. Supp. 3d 282 (S.D.N.Y. 2016).......................................................................................7

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
  848 F. Supp. 2d 410 (S.D.N.Y. 2012).......................................................................................4

*Gonzales v. Charter Commc'ns.., LLC*,
  No. 20-8299, 2020 WL 6536902 (C.D. Cal. Oct. 26, 2020).....................................................5

*Hamerslough v. Hipple*,
  No. 10-3056, 2010 WL 4537020 (S.D.N.Y. Nov. 4, 2010) ......................................................7

*Hermes of Paris, Inc. v. Swain*,
    867 F.3d 321 (2d Cir. 2017)......................................................................................................6

*Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.*,
    No. 04-1859, 2005 WL 1384055 (S.D.N.Y. June 9, 2005) ...............................................6, 9

*Latif v. Morgan Stanley & Co. LLC*,
    No. 18-11528, 2019 WL 2610985 (S.D.N.Y. June 26, 2019) ...................................................8

*Lockette v. Morgan Stanley*,
    No. 18-0876, 2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018).........................................................5

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)........................................................................................................7

*Murray v. UBS Secs., LLC*,
    No. 12-5914, 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) ...................................................6, 9

*New York State Nat. Org. for Women v. Cuomo*,
    No. 93-7146, 1997 WL 671610 (S.D.N.Y. Oct. 28, 1997).........................................................3

*Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*,
    No. 19-154178, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020)..............................7, 8, 9, 10

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partn.*,
    507 U.S. 380 (1993).................................................................................................................2

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993)....................................................................................................7

*Silivanch v. Celebrity Cruises, Inc.*,
    333 F.3d 355 (2d Cir. 2003)......................................................................................................3

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020).....................................................................................7, 9

*Whyte v. WeWork Cos., Inc.*,
    No. 20-1800, 2020 WL 3099969 (S.D.N.Y. June 11, 2020) .....................................................8

**Statutes**

9 U.S.C.A. § 3 .................................................................................................................................9

**Rules**

CPLR § 7515.........................................................................................................2, 8, 9, 10

I. **<u>PRELIMINARY STATEMENT.</u>**[1]

Garfin admits that her claims are subject to a binding arbitration agreement calling for arbitration before JAMS. Having conceded this fact, Garfin's opposition rests on three procedural arguments that go only to the question of where—not whether—she must arbitrate her claims. None is grounds to deny Charter's petition. Garfin first contends that she is not required to arbitrate at the AAA because she agreed to that forum by mistake. No so. Garfin assented to the Solution Channel Agreement, which requires arbitration at the AAA, first by submitting her claim to the internal dispute resolution program (called "Solution Channel") required by that agreement. When that process finished, Garfin reaffirmed her assent by requesting that Charter commence arbitration at the AAA pursuant to the Solution Channel Agreement. Garfin's apparent change of mind about her preferred arbitration forum cannot undo her agreement to proceed before the AAA. The facts speak for themselves. They show that Garfin, through her counsel, agreed with eyes wide open to follow the Solution Channel Agreement not once, but multiple times.

Next, Garfin claims that the Solution Channel Agreement cannot be enforced because, unlike her prior agreement to arbitrate at JAMS, it specifically requires arbitration of claims against Charter employees. According to Garfin, Charter hid this change from her and implemented it without additional consideration. This too is wrong. It is undisputed that Garfin and her counsel had notice of the terms of the Solution Channel Agreement for at least a year before agreeing to arbitration at the AAA, and that Charter provided additional consideration by its mutual agreement to arbitrate under the Solution Channel Agreement. No more is required to enforce that agreement. In any event, the individual defendants named in Garfin's related court action, *Garfin v. Charter*

---

[1] All abbreviations herein have the same meaning as in Petitioner's moving brief.

*Communications, Inc. et al*, No. 20-07050 (the "Court Action"), can compel arbitration under either the JAMS Agreement or the Solution Channel Agreement.

Finally, citing unrelated appeals involving CPLR 7515 at the Second Circuit and an intermediate state court in New York, Garfin argues that this Court should: (1) stay any decision on Charter's petition and (2) *lift the stay* in the Court Action so that she can litigate those claims in court. *See* Court Action, Sept. 11, 2020 Minute Entry. Garfin's proposal directly contradicts the FAA's mandates that courts must summarily decide the question of arbitration before any other litigation activity takes place. Garfin's improper collateral challenge to the stay in the Court Action should also be rejected because the Second Circuit and state court proceedings, which address issues and facts materially different from those here, have no bearing on this case. The Court should grant Charter's petition and compel arbitration of Garfin's claims to arbitration at the AAA. Alternatively, the Court should compel Garfin to arbitration at JAMS.

## II. ARGUMENT.

### A. Garfin Is Bound by The Solution Channel Agreement to Arbitrate at AAA.

Garfin admits that her counsel took multiple steps to assent to the Solution Channel Agreement and commence arbitration against Charter pursuant to that agreement. *See* Dkt. No. 25, ¶¶ 14-16; Dkt. No. 26, ¶ 10; *see also* Dkt. No. 3 ("Rodriguez Decl."), Exs. D-F. Her counsel now claims this was a mistake. Even if that were true, Garfin is still bound by the Solution Channel Agreement and her counsel's actions. "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts[.]" *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partn.*, 507 U.S. 380, 397 (1993) (citations and quotation marks omitted); *see also Am. Cash Card Corp. v. AT&T Corp.*, 210 F.3d 354 (2d Cir. 2000) (affirming sanctions dismissing

action and rejecting party's attempt "to avoid responsibility" by shifting "blame to the incompetence" of counsel"); *New York State Nat. Org. for Women v. Cuomo*, No. 93-7146, 1997 WL 671610, at *5 (S.D.N.Y. Oct. 28, 1997) ("[T]he acts and omissions of counsel are generally attributed to the client."). Garfin is bound by her counsel's conduct.

Garfin's attempt to point an accusatory finger at Charter's counsel for her attorneys' deliberate actions is irrelevant as a matter of law. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 (2d Cir. 2003) (refusing to excuse attorney's failure to comply with appellate deadline where counsel allegedly relied on information from opposing counsel). It is also contrary to the facts. In 2019, Charter's attorneys provided to Garfin's counsel copies of both the Solution Channel Agreement and JAMS Agreement. Reply Declaration of Melissa C. Rodriguez ("Reply Rodriguez Decl."), Exs. A-B. On July 7, 2020, Garfin's counsel confirmed that they intended to file her claims *at the AAA*: "***We*** inadvertently filed the Garfin Arbitration at JAMS, we received a notice from JAMS and ***will be filing today at the AAA***." Rodriguez Decl., Ex. D (emphasis added). Consistent with the Solution Channel Agreement, Garfin agreed to follow the Solution Channel internal review process before proceeding before the AAA. *Id.*, Exs. E-F. Contrary to any suggestion that a new attorney on the case made a "mistake", Garfin's attorneys Megan Goddard and Saranicole Duaban were both directly involved in Garfin's decision to proceed before the AAA:

- On July 31, 2020, Charter's counsel wrote to Ms. Goddard and Ms. Duaban: "I understand that you have received a response from Solution Channel. Once you all respond there that you'd like to proceed to arbitration, we (Morgan Lewis on behalf of Charter) ***can file for arbitration at the AAA***." Reply Rodriguez Decl., Ex. C (emphasis added).

- That same day (July 31), Ms. Goddard responded by asking whether Garfin's claims would be tolled as of the date she submitted her claim to the internal Solution Channel dispute resolution program until the date she filed in arbitration: "***I*** need an answer to this question today ***in order to make our decision***. Thanks." *Id.* (emphasis added).

3

- On August 2, Charter's counsel wrote back: "Saranicole and Megan, As per the Solution Channel guidelines, claims are tolled as of the date a claim is submitted to Solution Channel. Please let us know if you have any other questions, and keep us posted on your response to Solution Channel." *Id.* Ms. Goddard replied within two hours: "Great, that is all I wanted to know." *Id.*

- On August 3, Charter's counsel reaffirmed to Ms. Goddard and Ms. Duaban that any arbitration would proceed before the AAA: "Once you respond in Solution Channel there that you'd like to proceed to arbitration, we (Morgan Lewis on behalf of Charter) ***can file for arbitration at the AAA***." *Id.* (emphasis added).

Garfin then confirmed, on August 3, 2020, that she wished to proceed with arbitration pursuant to the terms of the Solution Channel Agreement. Rodriguez Decl., Ex. F ("We'd like to request arbitration of our client Karin Garfin's claims.").

The claim by Garfin and her counsel that she did not knowingly consent to the Solution Channel Agreement, and its requirement to arbitrate before the AAA, defies common sense. Unlike the Solution Channel Agreement, the JAMS Agreement does not require that claims be submitted to the Solution Channel alternative dispute resolution program. *Compare* Dkt. No. 4-2 *with* Dkt. No. 5-2. Yet Garfin submitted her claims to that program, received and sent multiple correspondence confirming the parties' agreement to proceed before the AAA, and then waited for the internal Solution Channel process to conclude before instructing Charter to commence arbitration at the AAA. Rodriguez Decl., Exs. E-F. These undisputed facts show that Garfin must arbitrate her claims before the AAA. *See* Dkt. No. 6 at 7-10; *see also Glencore Ltd. v. Degussa Engineered Carbons L.P.,* 848 F. Supp. 2d 410, 426 (S.D.N.Y. 2012) (party assents to arbitration agreement by taking actions consistent with its obligations under the contract).[2]

---

[2] If Garfin's counsel had in fact intended to proceed before JAMS, as they now claim, they presumably would have simply refiled her complaint with JAMS as soon as they realized their "mistake." They did not, and instead filed an action in state court in breach of *both* the JAMS Agreement and the Solution Channel Agreement.

### B. Garfin's Agreement to Arbitrate Her Claims Against The Individual Defendants Has No Bearing on The Enforceability of The Solution Channel Agreement.

Garfin claims that the Solution Channel Agreement is unenforceable because it expressly required arbitration of claims against individual employees, which she argues is "procedurally unconscionable" and required additional consideration. Dkt. No. 27 ("Opp.") at 6-7. This argument fails for three principal reasons. First, there is nothing "unconscionable" about Garfin's assent to the Solution Channel Agreement. Garfin and her counsel have been on notice of the terms of the Solution Channel Agreement *since at least 2019*. Reply Rodriguez Decl., Exs. A-B. Over a year after Charter's attorneys sent that agreement to her counsel, Garfin repeatedly affirmed her assent to arbitrate her claims before the AAA. Garfin's opposition ignores these facts.

Instead, her unconscionability argument is based solely on the premise that Charter's October 2017 email announcing the Solution Channel Agreement did not specifically mention arbitration against Charter employees. Charter's petition, however, does not rely on Garfin's receipt of the October 2017 email. The Court need not reach this issue in light of Garfin's assent to the Solution Channel Agreement in 2020.[3] Even so, Garfin misconstrues the law. New York does not require employers to advise employees of an arbitration agreement's specific terms as a condition to compelling arbitration. *See Lockette v. Morgan Stanley*, No. 18-0876, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018); *see also Gonzales v. Charter Commc'ns.., LLC*, No. 20-8299, 2020 WL 6536902, at *7 (C.D. Cal. Oct. 26, 2020) (rejecting unconscionability challenges to Solution Channel Agreement); Dkt. No. 6 at 9.[4]

---

[3] Garfin attaches a screenshot purportedly taken from her phone on September 28, 2017, showing a prompt to enter a password to access an account which Garfin labeled "On Stage NY1." Dkt. No. 24. Garfin did not present Charter with that screenshot at any point prior to filing her opposition in this action. Putting aside that the screenshot does not actually show that Garfin lacked access to her NY1 email account, whether or not Garfin received the October 2017 Solution Channel email is immaterial to the outcome of this petition.

[4] The lone decision cited by Garfin, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 248-49 (S.D.N.Y. 2020), does not change this analysis. In *Chen*, Judge Lehrburger *enforced* the employer's arbitration agreement, notwithstanding the employees' claims of unconscionability. *Id.*

5

Second, the Solution Channel Agreement is supported by adequate consideration: Charter's mutual agreement to arbitrate. Dkt. No. 6 at 9. Garfin concedes this mutual agreement is adequate consideration. Opp. at 7. She claims only that Charter agreed to arbitration under the JAMS Agreement, and so needed to offer something else to modify that agreement. The Solution Channel Agreement does *not* modify the JAMS Agreement. It is a new agreement, and Charter's new, mutual promise to arbitrate at the AAA is valid consideration. *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (mutual promise to arbitrate is sufficient consideration).

Third, the presence of the individual defendants in the Court Action has no bearing on Charter's petition. The Court can, and should, order Garfin to arbitrate her claims against Charter, even though the individual defendants are not parties to the petition. *See Hermes of Paris, Inc. v. Swain*, 867 F.3d 321, 326 (2d Cir. 2017) (granting employer's petition to compel arbitration notwithstanding presence of individual defendants in underlying court action).

Whether the Court compels Garfin to arbitration pursuant to the Solution Channel Agreement or the JAMS Agreement, she could not proceed in court solely against the individual defendants (who have yet to be served). The FAA and Second Circuit law require the Court to continue to stay the Court Action. *See, e.g.*, *Murray v. UBS Secs., LLC*, No. 12-5914, 2014 WL 285093, at *14 (S.D.N.Y. Jan. 27, 2014) (Failla, J.) (staying court action pending arbitration of employment dispute after holding that federal policy requires compelling arbitration proceeding without delay); *Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.*, No. 04-1859, 2005 WL 1384055, at *6 (S.D.N.Y. June 9, 2005) (compelling arbitration and staying action against defendants not subject to arbitration agreement). And, since Garfin's claims against the individual defendants, who she alleges are each an "employer," are intertwined with Garfin's claims against Charter, Court Action, Dkt. No. 1-1 ("Compl."), ¶¶ 241-242, if and when the

individual defendants are served, they could compel arbitration under the JAMS Agreement just as they could under the Solution Channel Agreement. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 n.11 (2d Cir. 2017) (compelling arbitration of claims against defendant-employee not party to arbitration agreement); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (non-signatory individual defendants can enforce arbitration agreement where plaintiff's claims against employer and individual defendants arise out of same alleged actions); *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016) ("It is settled that an arbitration agreement may be enforced in favor of third-party beneficiaries."). Garfin cannot "say on the one hand that [the individual] defendants are h[er] employers . . . but on the other that they are not parties to [the JAMS Agreement] for the sake of avoiding arbitration. [Sh]e may not pick and choose when it is convenient for the defendants to be h[er] legal employers." *Hamerslough v. Hipple*, No. 10-3056, 2010 WL 4537020, at *3 (S.D.N.Y. Nov. 4, 2010) (compelling arbitration of claims against individual defendants where employee's arbitration agreement did not expressly apply to disputes against other employees).[5]

### C. Arbitration Should Not Be Stayed Pending Unrelated Appeals.

Garfin urges the Court to delay granting Charter's petition while courts consider appeals in two unrelated cases: a New York State appellate court's review of an unpublished trial court decision, *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, No. 19-154178, 2020 WL 3961988 (N.Y. Sup. Ct. July 10, 2020), and the Second Circuit's review of *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385 (S.D.N.Y. 2020). Opp. at 11. Neither appeal is reason to delay

---

[5] Garfin's argument also runs counter to the presumption in favor of arbitration, including as to the individual defendants. *See Citibank, N.A. v. Franco*, No. 11-2925, 2011 WL 6961404, at *5 (S.D.N.Y. Dec. 29, 2011) (recognizing that "strong federal policy in favor of arbitration "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (internal citation omitted).

7

compelling arbitration in this case.

As for *Newton*, this Court is not bound by any decision of an inferior state court tribunal. Further, as explained in Charter's moving brief, *Newton* rests on the flawed premise that the FAA did not preempt CPLR 7515(b)(iii) in that case because the plaintiff's claims involved only parties and allegations within New York.  *See Newton*, 2020 WL 3961988 at *4.  That decision conflicts with the Supreme Court's instruction that employment-related contracts are covered by the FAA.  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Indeed, every federal court to consider the issue has found that the FAA preempts CPLR 7515(b)(iii).  *See, e.g.*, *Latif v. Morgan Stanley & Co. LLC*, No. 18-11528, 2019 WL 2610985, at *1 (S.D.N.Y. June 26, 2019); *Whyte v. WeWork Cos., Inc.*, No. 20-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020).

But even under *Newton*'s flawed reasoning, the FAA applies and preempts CPLR 7515(b)(iii) because Garfin's claims expressly involve alleged conduct occurring across state lines (in Connecticut), and Charter is not a citizen of New York.  *See* Dkt. No. 1, ¶ 20; *see also* Compl., ¶¶ 90-98 (describing alleged conduct in Connecticut).  Moreover, unlike Garfin's claims, the plaintiff's claims in *Newton* did not relate to a termination or loss of any wage or benefit.  *Id.*, 2020 WL 3961988 at *10.  According to *Newton*, the lack of a termination or loss of wage or benefit was the "critical distinction" (*id.*) exempting that case from the Supreme Court's broad mandate that all "[e]mployment contracts . . . are covered by the FAA."  *Waffle House*, 534 U.S. at 289. *Newton* reasoned (erroneously) that the FAA did not cover the plaintiff's non-termination claims because the "gravamen of the dispute in [*Waffle House*] revolved exclusively around a quintessential incident of employment, i.e., the loss, by an employee, of his job[.]" *Newton*, 2020 WL 3961988 at *6.  Yet even *Newton* agreed that claims involving discharge—as Garfin alleges here—are, by their "very nature," central to the employment relationship and covered by the FAA.

8

*Newton*, 2020 WL 3961988 at *6.

This Court should similarly deny Garfin's invitation to stay its decision until after the Second Circuit considers *Tantaros*. The Second Circuit *will not be answering* "the question of federal preemption of CPLR § 7515." Opp. at 11. *Tantaros* concerns a narrow jurisdictional question, not present here, as to whether that case should proceed in federal rather than state court. *Id.,* 465 F. Supp. 3d at 389. Regardless of the outcome of the Second Circuit's decision in *Tantaros*, it will have no bearing on the question of whether Garfin should be compelled to arbitrate.

### D. The Court Should Deny Garfin's Request to Litigate Her Claims in the Court Action Pending the Court's Ruling on the Petition.

Garfin insists that she be permitted to litigate her claims in the stayed Court Action while Charter's petition is pending. Garfin's request should be denied because the FAA dictates that the Court Action continue to be stayed as to *all defendants* until both the petition and the arbitration itself are resolved. *See* 9 U.S.C.A. § 3; s*ee also*, *Murray*, 2014 WL 285093, at *14; *Hughes, Hooker & Co.*, 2005 WL 1384055, at *6; *Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc.*, No. 98-2494, 1998 WL 283355, at *3 (S.D.N.Y. May 29, 1998) (staying court action pending resolution of petition to compel arbitration covering same claims). Garfin contends that she will be prejudiced by differences between arbitration and proceeding in court. Opp. at 11-13. Courts repeatedly have rejected these same arguments. *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 484 (S.D.N.Y. 2011). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Charter, on the other hand, will be prejudiced by having to litigate Garfin's claims in this forum instead of arbitrating them as the parties agreed. *See, e.g.*, *DaPuzzo v. Globalvest Mgmt.*

9

*Co., L.P.*, 263 F. Supp. 2d 714, 743 (S.D.N.Y. 2003) (compelling arbitration after finding that prejudice of "depriv[ing] [defendants] of the benefit of the bargain they sought in the parties' arbitration agreement, would be substantial"). Garfin's request to lift the stay in the Court Action should be denied.

### E. Alternatively, the Court Should Compel Garfin to Arbitrate at JAMS.

Garfin repeatedly admits that she is bound by the JAMS Agreement. *See, e.g.*, Dkt. No. 24, ¶¶ 8-9 ("I examined the agreement and realized that as a condition of employment I had accepted that agreement"). None of the arguments in her opposition, *even if adopted by the Court*, would alter the binding force of that agreement. Garfin, in fact, directs only a single argument to her JAMS Agreement—her misplaced belief that the FAA does not preempt CPLR 7515(b)(iii). However, CPLR 7515(b)(iii) only applies to contracts entered into on or after July 11, 2018. *See Altman v. Salem Media of New York, LLC*, 132 N.Y.S.3d 606 (N.Y. App. Div. 2020). Garfin entered into the JAMS Agreement *in 2017* at the time she was hired by Charter. Dkt. No. 6 at 2-3. Even if the First Department affirms *Newton,* CPLR 7515(b)(iii) would not apply to the JAMS Agreement or otherwise preclude the Court from compelling Garfin's claims to arbitration. So, for the reason set in Charter's moving papers, if the Court does not compel arbitration under the Solution Channel Agreement, it should compel arbitration under the JAMS Agreement. Dkt. No. 6 at 9-10.

## III. CONCLUSION.

For all of the reasons set forth above and in Charter's petition and moving papers, the Court should compel all of Garfin's claims to arbitration before the AAA in accordance with the terms of the Solution Channel Agreement or, in the alternative, compel Garfin's claims to arbitration before JAMS pursuant to the JAMS Agreement.

Dated:  December 11, 2020
        New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   /s/ Melissa C. Rodriguez
      Melissa C. Rodriguez
      Jason D. Burns
      Jonathan M. Weinberg

101 Park Avenue
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
melissa.rodriguez@morganlewis.com
jason.burns@morganlewis.com
jonathan.weinberg@morganlewis.com

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby affirm that I caused to be served a true and correct copy of Charter's Reply Memorandum of Law, Reply Declaration of Melissa C. Rodriguez and exhibits, by ECF this 11th day of December, 2020, on:

Megan S. Goddard, Esq.
Anthony P. Consligo, Esq.
GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, New York 10006
*Attorneys for Respondent*

*/s/Melissa C. Rodriguez*
Melissa C. Rodriguez